# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 7, 2011

## STATE OF TENNESSEE v. NAKIA BOHANAN

**Appeal from the Criminal Court for Shelby County**
**No. 08-05997      Chris Craft, Judge**

**No. W2010-02669-CCA-R3-CD  - Filed August 15, 2011**

A Shelby County Criminal Court jury convicted the defendant, Nakia Bohanan[1], of aggravated burglary, *see* T.C.A. § 39-14-403 (2006), and the trial court sentenced the defendant to serve 15 years' incarceration as a Range III, persistent offender.  On appeal, the defendant contends that the evidence is insufficient to support his conviction and that the trial court erred in its application of an enhancement factor to determine the length of his sentence.  Discerning no infirmity in the evidence but that the trial court erred at sentencing, we affirm the defendant's conviction and modify the sentence to 14 years' incarceration.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed as Modified**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Tony R. Brayton (on appeal); and Trent Hall (at trial), Assistant Public Defenders, for the appellant, Nakia Bohanan.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Marianne Bell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

James Hunter, the victim, testified at trial that on the evening of May 21, 2008, he was doing yard work at his home at 2032 Rile Road in Memphis, Tennessee.  After finishing the yard work and starting the laundry, he ran some errands.  While he was out, his

---

[1]  The transcript reflects that the defendant spells his name "Bohanon."  As is the practice of the court, we defer to the spelling utilized in the indictment.

alarm system alerted the police to a possible intruder at his home. When the victim returned home, the police were present. When he arrived, he discovered that his home had been broken into via the side door entrance, which consisted of a wrought iron door and a wooden door. A television set and DVD player had been taken from the home. From the appearance of the scene, someone had been in the victim's kitchen and also in the his bedroom because one of the victim's dresser drawers was open.

The police took an incident report before leaving the residence. The victim then telephoned his father, and while talking on his cellular telephone, went to his bedroom to see if anything was missing from the opened dresser drawer. Upon seeing a box of bullets in the drawer, he decided to check to make sure his gun had not been stolen. The gun, a .40 caliber Smith and Wesson that was kept loaded at all times, was hidden under the victim's mattress. The victim retrieved the gun from under the mattress and proceeded to check on his clothes in the laundry room, all while talking to his father on his cellular telephone.

After ending his telephone conversation with his father, the victim heard the sound of someone coming through his door. As he went to investigate the sound at the door, the victim peered around the corner and saw an individual, later identified as the defendant, standing in the hallway inside the door approximately 10 feet from the doorway. The defendant approached the victim, and the victim shot several times at the defendant. One of the shots struck the defendant in the abdomen. The defendant yelled and ran out the door.

The victim telephoned 9-1-1 to report the incident. He then ran after the defendant to find out where the defendant had been shot. The defendant had collapsed on the sidewalk in front of a neighboring house approximately two to three houses away. The victim testified that he did not know the defendant and did not authorize him to be in his home.

Memphis Police Department (MPD) Officer Samuel Briggs responded to the call at the victim's home in the early morning hours of May 22, 2008. Officer Briggs confiscated the victim's .40 caliber gun and conducted a search of the victim's home. He observed broken glass and bullet strikes along the hallway of the home. He also found shell casings in the living room, kitchen, and hallway. Officer Briggs took the victim to the police station, where the victim gave a statement. The victim was not charged with any offense associated with the shooting.

MPD Officer Kevin Barrett and other officers also arrived at the scene to ascertain the condition of the defendant. The defendant claimed he was "hot" and attempted to remove his shirt. Officers placed the defendant in handcuffs and patted him down while awaiting the arrival of the ambulance. Officer Barrett recovered from the defendant's

clothing, three Phillips-head screwdrivers, a flat-head screwdriver, a pair of wire pliers, and two metal pipes used to smoke crack cocaine. Officers also found inside the defendant's jacket pocket broken glass resembling glass from the victim's door and wooden splinters resembling the wooden paneling from the victim's home. MPD Officer Alpha Hinds testified that both the wrought iron door and wooden door were open when he arrived at the scene.

Paramedics removed the defendant's clothing to treat his wound. The defendant was taken to the hospital, where he required surgery to remove the bullet from his body. He remained in the hospital for two months following the shooting.

The defendant testified at trial that he was drawn to the victim's residence when the police left after the initial burglary report. He admitted that it was his intent to enter the victim's home to steal money to buy more crack cocaine. He admitted that he was a crack cocaine addict at the time of the incident and that he carried the screwdrivers, pliers, and pipes on the day of the incident. He also admitted that he had been previously convicted of aggravated burglary. The defendant claimed, however, that he never made it inside the victim's home and had not crossed the threshold when the victim shot him. He denied committing the initial aggravated burglary as well. The defendant admitted peeping through the victim's window with an intent to enter, but he said, "I never got the chance to open the door, period."

Based upon this evidence, the jury convicted the defendant, as charged, with the aggravated burglary of the victim's home. At sentencing, the trial court determined the defendant to be a Range III, persistent offender and imposed a sentence of 15 years' incarceration. On appeal, the defendant contests the sufficiency of the evidence and the propriety of the trial court's sentencing decision. We will address each issue in turn.

*Sufficiency of the Evidence*

The defendant argues that the evidence is insufficient to support his conviction of aggravated burglary because there was no physical evidence to support the victim's testimony that the defendant was already inside the home when the shooting occurred. He claims that the absence of any blood inside the home and the presence of glass shards and wooden splinters inside the pocket of his clothing support the inference that he had not yet entered the home. The State contends that there is sufficient evidence to support the conviction, citing the absence of any shell casings found outside the home and the presence of bullet strikes found throughout the home. The State contends that the absence of blood within the home is consistent with the victim's testimony that the defendant stood approximately 10 feet inside the doorway and immediately ran away when shot. In essence,

the State argues that the jury rejected the defendant's testimony and accredited the victim's testimony in arriving at its verdict. We agree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.*. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

Tennessee Code Annotated section 39-14-403 defines aggravated burglary as the "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." T.C.A. § 39-14-403. As relevant to this case, the Code provides that "[a] person commits burglary who, without the effective consent of the property owner enters a building . . . with intent to commit a felony, theft or assault." *Id*. at § 39-14-402(a)(1).

The evidence at trial showed that the defendant entered the victim's residence without the victim's consent and, by the defendant's own admission, did so with the intent to steal money to support his crack cocaine habit. The physical evidence concerning the location of the shell casings and bullet strikes within the home supported the victim's testimony that the defendant was approximately 10 feet inside the home when discovered and fired upon. Any other factual issues raised by the evidence were appropriately resolved by the jury as the trier of fact. Accordingly, we conclude that the evidence is sufficient to support the defendant's conviction of aggravated burglary.

*Sentencing*

The defendant also argues that the trial court misapplied enhancement factor (12) – that "the actions of the defendant resulted in the death or serious bodily injury to a victim or a person other than the intended victim." *See id*. § 40-35-114(12). Essentially, the defendant argues that "[t]he injury was inflicted not by the defendant but by the victim" and that, therefore, this enhancement factor was inapplicable. The State acknowledges, as did the trial court, that the application of enhancement factor (12) in this manner is "'novel'" but argues that it is apt. Citing *State v. Richard Ellis Stapleton*, No. E2008-01776-CCA-R3-CR (Tenn. Crim. App., Knoxville, Nov. 10, 2009), the State notes that this court has affirmed the application of enhancement factor (10) – "the defendant had no hesitation in committing a crime when the risk to human life is high" – to injuries sustained by a codefendant during an especially aggravated robbery. That being said, the State also asserts that the trial court's sentence is appropriate in light of the trial court's application of enhancement factors concerning the defendant's history of criminal convictions and failed attempts at probation. *See id*. § 40-35-114(1) and (8).

When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d)(2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing decision, the trial court was required to consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40–35–113 and 40–35–114;

(6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40–35–210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

At the sentencing hearing in this case, the State argued for the application of enhancement factors concerning the defendant's history of criminal convictions, *see id.* § 40-35-114(1), failure to comply with conditions of release, *see id.* § 40-35-114(8), possession of a deadly weapon during the commission of the offense, *see id.* § 40-35-114(9), and that "the actions of the defendant resulted in the death, or serious bodily injury, to a victim or a person other than the intended victim," *see id.* § 40-35-114(12). The trial court determined that factors (1) and (8) were applicable and placed "a pretty good amount of weight" on the defendant's criminal history alone. The trial court found factor (9) inapplicable, reasoning that the screwdrivers possessed by the defendant were only burglary tools and would not be considered deadly weapons to increase the length of the defendant's sentence. In considering the application of factor (12), the trial court commented that it was a "novel consideration" when the defendant actually suffered the serious bodily injury by the victim's action. The trial court applied factor (12) but said, "I am not assigning that much weight to [it]." The court then imposed the maximum 15-year sentence.

We find no cases dealing with the application of factor (12) to a situation where the defendant suffers serious bodily injury during the commission of a crime but by the actions of another individual. Furthermore, we do not find persuasive the State's analogy to factor (10) because, in our view, increasing the length of a defendant's sentence due to his

or her lack of hesitation about committing a crime when the risk to human life was high is wholly distinguishable from increasing the length of sentence based upon the actions of the defendant resulting in serious bodily injury to an unintended victim, where, as in this case, the unarmed defendant is the unintended victim. For these reasons, we conclude that factor (12) should not have been applied in this case.

As previously noted, the State argues that even if the trial court erroneously applied factor (12), the remaining factors support the imposition of the 15-year sentence. In a typical case, we would agree with the State, particularly in light of the trial court's giving "a good amount of weight" to the defendant's criminal history in arriving at the length of sentence. In this case, however, the trial court imposed the 15-year sentence and went further to state that "had it not been for enhancement factor [(12)] I would have sentenced [the defendant] to [14] years." In our view, the trial court made a weighing assessment for the use of factor (12). "[A] trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *State v. Carter,* 254 S.W.3d 335, 345 (Tenn. 2008). For this reason, an appellate court is precluded from reweighing appropriately applied enhancement and mitigating factors. *See Carter*, 254 S.W.3d at 344-45. Accordingly, we modify the defendant's sentence to 14 years' incarceration. On remand, the trial court shall enter a modified judgment reflecting a sentence of 14 years as a Range III, persistent offender.

*Conclusion*

The evidence is sufficient to support the defendant's conviction of aggravated burglary. Because the trial court misapplied an enhancement factor and made findings concerning what the defendant's sentence would have been had the factor not been applied, we modify the defendant's sentence to 14 years and direct the entry of a modified judgment on remand.

_____
JAMES CURWOOD WITT, JR., JUDGE